UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JODI M. NEWCOMB, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 2:11-cv-02-GZS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge who presided at the plaintiff's hearing permissibly barred a witness from testifying and declined to admit evidence. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a medically determinable impairment of a mood disorder, Finding 3, Record at 11; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels without any nonexertional limitations, Finding 5, *id.* at 13; that, considering her age (26 years old, defined as a younger individual, on the alleged disability onset date),

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 16-17; and that she, therefore, was not disabled from September 30, 2003, her alleged disability onset date, through the date of the decision, August 18, 2010, Finding 11, *id*. at 17.[2] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

## I. Discussion

The plaintiff contends that the administrative law judge violated her rights to due process and to a fair hearing when he refused to allow her case manager, Gayle Donahue, to testify, and that he further erred in barring her from presenting additional medical evidence that James Claiborn, Ph.D., an expert present at her hearing, testified would have been helpful in forming his opinions. *See* [Statement of Errors] (Docket No. 12) at [8]-[15]. I find no error and, hence, recommend that the court affirm the decision.[3]

---

[2] In referencing the plaintiff's alleged date of onset of disability, the administrative law judge overlooked the fact that she had amended that date to January 14, 2006. *See* Record at 7. However, nothing turns on that error.

[3] In her statement of errors, the plaintiff moved to supplement the record to include two documents submitted to the administrative law judge but excluded from the record, a July 26, 2010, description of the plaintiff's Assertive Community Treatment ("ACT") team ("July 26 ACT Description") and a July 29, 2010, offer of proof concerning Donahue's proffered testimony ("July 29 Letter"). *See* Statement of Errors at [3]-[4]. On November 18, 2011, I convened a conference with counsel to inquire about those documents plus an additional document that I had noted was excluded from the record, an August 9, 2010, follow-up letter from the plaintiff to the administrative law judge ("August 9 Letter"). *See* Report of Hearing and Order re: Administrative Record (Docket No. 20) at 1-2. Counsel for the commissioner did not object to the supplementation of the record to include the July 29 or August 9 letters, but did object to the supplementation of the record to include the July 26 ACT Description on the ground that the administrative law judge had expressly excluded the description, a copy of a Wikipedia entry. *See id*. at 2. I ordered that the commissioner supplement the record to include the July 29 and August 9 letters and file copies of those documents with the court pending the official filing of a Supplemental Record, and that the plaintiff file a copy of the July 26 ACT Description. *See id*. at 2. The parties did so. *See* Docket Nos. 18 (July 26 ACT Description), 19 (July 29 Letter), 19-1 (August 9 Letter); *see also* Supplemental Record (Docket No. 21) at 777-84 (July 29 Letter), 774-75 (August 9 Letter). I find no basis on which to disturb the administrative law judge's decision to exclude
*(continued on next page)*

2

## A. Colloquies and Rulings at Hearing; Post-Hearing Evidence

The plaintiff's hearing was held on July 28, 2010. *See* Record at 29. She was represented by attorney Henri A. Benoit, II. *See id*. at 29, 111. The plaintiff testified, as did two experts, Dr. Claiborn, a psychologist, *see id*. at 29, 149, and Richard B. Hall, a vocational expert, *see id*. at 29, 153.

Prior to the hearing, Benoit sent the administrative law judge a letter summarizing the plaintiff's claim and stating:

> The [plaintiff] you will meet at the hearing will have been clean and sober since February 28, 2008, after a long and challenging process that included an inpatient and then an intensive outpatient program. She now has an alcohol counselor. She has a case manager whom you will meet at the hearing, and there are several other supportive providers who are helping [the plaintiff] rebuild her life.

*Id*. at 280. Benoit added, under the heading, "Treating Healthcare Providers":

> [The plaintiff's] primary care physician is Hal Cohen, DO. Virginia Lawrence ARNP prescribes the medications to treat the mental impairments. NP Lawrence is one member of the A.C.T. which has been providing various forms of support and treatment. Gayle Donahue MHRT-C is the [plaintiff's] lead case manager. Brenda Dowling MHRT-C, CADC is her alcohol counselor. There are a total of fourteen people on this team. The [plaintiff] typically will meet with one o[f] the team three times per week. Ms. Donahue will be present for the hearing.

*Id*. at 280.[4] Benoit also submitted a mental impairment questionnaire dated July 8, 2010, signed by both Donahue and Lawrence. *See id*. at 765-71.

A "MHRT/C" is a Mental Health Rehabilitation Technician/Community. *See* Procedural Guidelines for Mental Health Rehabilitation Technician/Community (MHRT/C) Certification (Me. Dep't of Health & Human Servs., Office of Adult Mental Health Servs. May 2008). "The MHRT/C is a competency-based certification." *Id*. at 5. Specified knowledge competencies "are

---

from the record the July 26 ACT Description, a generic Wikipedia entry. However, even were I to take that document into consideration, it would not alter my recommended decision.

[4] It is not clear whether this pre-hearing letter was dated July 8, 2010, or July 16, 2010. *See* Record at 279-84. However, nothing turns on the discrepancy.

deemed necessary to work in the field of adult community mental health and are therefore required for MHRT/C certification." *Id*. "The MHRT/Community Certificate meets the MaineCare 'other qualified mental health professional' requirement for providing specific services to adults[,]" including assertive community treatment, or ACT, services. *Id*.

The administrative law judge contacted Benoit's office on July 23, 2010, to request Donahue's records. *See* Record at 32; July 29 Letter at [2]. At the outset of the plaintiff's hearing five days later, Benoit stated that he was filing that day a list of contact dates between the plaintiff and members of her ACT team, including Donahue, which he had not successfully filed the previous day because of "technological problems" with a fax machine. *See id*. at 32-33. He acknowledged that this document was not in the nature of the substantive records that the administrative law judge had requested but explained that he had learned from Donahue only that day that there were in fact substantive notes of ACT team meetings. *See id*. He stated that Donahue's staff had previously informed his staff that no such notes existed and had evidently been under the misimpression that only Lawrence's records needed to be released in response to his office's requests for ACT team notes. *See id*. at 33.

Benoit reiterated his request that Donahue testify at the hearing. *See id*. at 34. The administrative law judge ruled:

> I'm going to deny your motion to have her testify . . . in the absence of those treatment notes. I think, you know, this is – number one this is a DSI [Disability Service Improvement] case. The notes should have been submitted. I understand your problems in getting those notes and I can sympathize with you on that. But I think that they should have been submitted timely. Secondly I think that, you know, in the absence of those notes, I think that the notes would – any witness would not be able to cross-examine the witness fairly or reliably in the absence of those notes. So under those, I don't see how consequently that testimony can be particularly reliable, notwithstanding how credible they may be.

4

*Id.* The administrative law judge stated that he would permit the plaintiff to file a written offer of proof post-hearing. *See id*. at 35. Benoit then requested that Donahue be permitted to testify as a fact witness. *See id*. ("Would you consider limiting the scope of the testimony so that she . . . is a fact witness[?]") The administrative law judge summarily denied that request. *See id*.

The issue of the absence of the ACT team records surfaced again during the plaintiff's testimony, after she began testifying on the topic of the assistance provided by that team:

> ALJ: And these are the records that aren't included, is that right? We don't have those records?
>
> ATTY: That's right, Your Honor.
>
> ALJ: Okay. If the records aren't in the evidence, then I don't want to allow this testimony, okay.
>
> ATTY: Your Honor, she gets to testify about –
>
> ALJ: Counsel, no, I know that she's not going to – I'm not going to – I'm not able to look at – to cross-examine her if this is not in the record.
>
> ATTY: Your Honor, if there would be – if I may.
>
> ALJ: Yes.
>
> ATTY: It would be like in another hearing the claimant saying that she gets support from two close friends. And how much contact do you have with them, how do they help you.
>
> ALJ: That's different.
>
> ATTY: It's this –
>
> ALJ: It's different.
>
> ATTY: This is a fact-based question. These are – this is lay testimony, Your Honor. I'm asking about facts, not medical evidence, Your Honor. I'm just asking about the facts of the contact that she has, the type of contact, the frequency of it.

*Id*. at 59-60. The administrative law judge did permit Benoit to elicit testimony from the plaintiff concerning her interactions with the ACT team. *See id*. at 60-63. The plaintiff testified that the ACT team helped her with paperwork and documentation, for example, for her subsidized housing and Social Security applications, and with organizing herself to complete tasks. *See id*. at 61-63.

Dr. Claiborn testified concerning the plaintiff's medically determinable mental health diagnoses and the severity of symptoms arising therefrom. *See id*. at 70-87. At the outset, he noted that several sets of treatment notes were missing from the record, including notes of a weeklong stay at Spring Harbor Hospital ("Spring Harbor") and of two courses of treatment with the Mercy IOP [Intensive Outpatient] Program. *See id*. at 70-71, 86. He stated that he was "[c]oncerned about the lack of records which would certainly help me explain some things." *Id*. at 71.

Dr. Claiborn testified that the plaintiff had only two medically determinable impairments, a mood disorder not otherwise specified and alcohol dependence, and that, based on the medical record, he agreed with the findings of Disability Determination Services ("DDS") nonexamining expert Scott Hoch, Ph.D., that, for purposes of the so-called "B criteria," the mood disorder imposed only mild functional limitations. *See id*. at 79, 731, 741.[5] However, he noted that, were he to credit the plaintiff's testimony, he would find that she had at least moderate impairment of activities of daily living, moderate impairment in social functioning, and marked impairment in

---

[5] The commissioner uses the so-called "B criteria," part of a specialized psychiatric review technique, to assess the impact of a claimant's mental impairment(s) on activities of daily living, social functioning, and concentration, persistence, or pace, and whether the claimant has suffered any episodes of decompensation. *See Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424, at *8 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007); 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

concentration, persistence, and pace. *See id*. at 80. Hall testified that a marked impairment in concentration, persistence, and pace would preclude the performance of any work. *See id*.

Benoit asked Dr. Claiborn whether the missing Spring Harbor and IOP records would "potentially permit [him] to express some opinions regarding the B criteria that weren't exclusively based upon the claimant's testimony?" *Id*. at 86. Dr. Claiborn responded, "I'm sure they might well relate to that[,] yes." *Id*. He agreed that it would be helpful to obtain those records. *See id*. at 87. Benoit then moved for an extension of time to obtain and file the records. *See id*. The administrative law judge responded, "Well, it's a DSI case. The records were supposed to be here five days before. . . . [Y]ou'll have to give me a good reason . . . why they weren't submitted . . . timely." *Id*. Benoit responded: "I thought we had a complete record, but obviously we didn't. I wasn't aware that they were missing." *Id*. He elaborated:

> This also I guess relates to the records that I learned exist on this, of this ACT team. These I guess are intended to trump the basic notion that we needed a well-developed medical record to make this decision. Which intended to encourage everyone to get the evidence in timely. But the overriding and underlying value here is a properly developed medical record. And even if it is the representative's fault that we don't have some records that the ME [medical expert] says would be very helpful, you should still exercise your discretion appropriately and permit us to get the records, so that the medical expert can express opinions. That's what we have him here for. So even if it's my fault, you know, the evidence needs to be properly developed. And it apparently is not – . You know, and I would also say that about the ACT records, that I did not know existed[,] the representative mean [sic] that they were not making records. Today I learned directly from the potential witness that I wanted to call that they do in fact have records, they just don't send them when they're asked for them. Yeah, I think that's unfair to the claimant for you and the doctor not to have those records.

*Id*. at 87-88. The administrative law judge denied the request, stating:

> I'm not going to find good cause. If that's your offer of proof, I'm not going to find good cause for many reasons. But to note that, you know, DSI was not enacted in a vacuum. And it was in response partially to systemic lack of preparation where on the day of hearing, or after hearing, the record never closed because records were coming in. And it led to a delay in adjudication that was intolerable. And well understandably, and I think DSI recognized this, that there

7

>   are situations where late filed evidence should be admitted, in order to do that, there has to be good cause.

*Id.* at 88.

Post-hearing, Benoit submitted the July 29 Letter, renewing his request for additional time to obtain the medical records of Southern Maine Medical Center ("SMMC") IOP, the ACT team, and Spring Harbor. *See* July 29 Letter at [1].[6] He stated that he had been able to confirm that, by letters dated November 5, 2009, copies of which he attached, his office had requested the Spring Harbor and SMMC records, that Spring Harbor responded that there were no records, and that SMMC had sent some records but not those pertaining to the IOP. *See id.* He noted that he had not had confirmation until the day of the hearing that the ACT team records existed. *See id.* He stated that Donahue had told his assistant, in a phone conversation in June 2010, that the ACT team did not keep records of its meetings with clients. *See id.* at [1]-[2] n.1. He further stated that, after the administrative law judge contacted his office on July 23, 2010, a staff member faxed an urgent request for ACT team records, as well as updated records from Lawrence, in response to which his office received only the updated Lawrence records. *See id.* at [2].

He argued that "[i]t should be apparent that I was misled regarding the existence of the ACT session notes" and that, "[w]hatever standard you want to apply under DSI is clearly satisfied by the good faith efforts we made to obtain all of the records that we were aware of prior to the hearing." *Id.* He contended that, in the circumstances, the adjudication of the plaintiff's appeal "based on medical evidence that you now know is incomplete because certain providers failed to provide me with all of the records I requested, would be wrong, unfair to this

---

[6] It is not clear why Benoit referenced SMMC, rather than Mercy, IOP records. However, nothing turns on the discrepancy.

claimant and contrary to your own duty to develop the medical record before issuing a decision."

*Id*.

He further requested that the administrative law judge reconsider his decision to bar Donahue from testifying, stating:

> As I explained, my intention was to present Ms. Donahue as a lay witness to answer questions about her role on the ACT team and to describe her observations of the [plaintiff] over a lengthy period when she had direct encounters with [the plaintiff] as often [as] once or twice every week. Ms. Donahue is a case manager. She is not a medical expert, and I did not identify her as an individual who is qualified to offer medical opinions.
>
> Claimants are entitled to present fact witnesses at their hearing, and I provided notice in advance of the hearing that Ms. Donahue was going to attend the hearing to testify. There is no justification for setting preconditions on the testimony of a lay witness.

*Id*. at [3].

Benoit followed up with the August 9 Letter, enclosing SMMC IOP records and stating that Spring Harbor continued to claim that it had no record of an admission of the plaintiff and that his staff was investigating whether the hospitalization was at another facility. *See* August 9 Letter. He renewed his request that the administrative law judge keep the evidence open and schedule a supplemental hearing. *See id*.

### B. Pertinent Portion of Decision

In his decision dated August 18, 2010, the administrative law judge once again rejected the plaintiff's requests to submit post-hearing evidence and to convene a supplemental hearing, stating, in relevant part:

> The [plaintiff] moved for leave to file late additional treatment records, including records from the [plaintiff]'s assertive community treatment (ACT) program. Alternatively, the [plaintiff] moved to allow Ga[yle] Donahue (Ms. Donahue), the [plaintiff]'s case manager and a member of her ACT program, to testify. The undersigned, however, denied the [plaintiff]'s motion. In so denying, the undersigned noted that this is a disability service improvement (DSI) case

9

requiring timely submission of all evidence, or to establish good cause as to why such evidence is untimely.

[T]he [plaintiff]'s offer of proof at hearing did not establish good cause to admit the late-filed evidence, and in the absence of these treatment notes and regardless of how credible Ms. Donahue's testimony may be, a fair and reliable cross-examination of Ms. Donahue was not impossible [sic]. The [plaintiff] then moved to allow Ms. Donahue to testify as a lay witness limiting the scope of her testimony. However, the undersigned denied this motion as well. The undersigned noted the [plaintiff]'s objections and provided the [plaintiff] the opportunity to file a written offer of proof after the hearing. This offer of proof has been considered. However, the undersigned is not persuaded by the [plaintiff]'s post-hearing letter of July 29, 2010, or the [plaintiff]'s follow up letter of August 9, 2010, that good cause has been established.

The [plaintiff]'s representative filed an appearance on May 18, 2009, approximately 15 months before the hearing. The [plaintiff] requested a hearing on August 20, 2009, approximately 12 months before the hearing. The [plaintiff] was mailed notice on March 18, 2010, approximately 5 months before the hearing, to secure and file proposed evidence. The hearing notice was mailed on April 29, 2010, approximately 90 days before the hearing.

The [plaintiff]'s argument is essentially that she timely [] requested treatment notes from Southern Maine Medical Center Intensive Outpatient Program, was somehow misled on some uncertain dates by some unnamed source as to the existence of the treatment notes, and became aware of the existence of treatment notes within about a week of hearing. This argument is given little weight.

The purported lack of knowledge of treatment notes is inconsistent with the well-recognized requirement of medical providers to maintain timely and appropriate treatment notes. The absence of these treatment notes should have served as special warning that something out of the ordinary was at issue in this case, requiring timely investigation. None [was] made apparently. The [plaintiff] should have made more efforts, and particularly, in a more timely fashion, to secure these treatment notes, which the [plaintiff] asserts is a major aspect of her case. The failure to exercise due diligence in investigating and securing these treatment notes is not good cause within the meaning of the regulation to warrant the admission into evidence of late-filed evidence.

*Id*. at 7-8.

### C. Analysis

#### 1. Preclusion of Donahue Evidence

The plaintiff first argues that the decision to preclude Donahue's testimony denied her the right to procedural due process and a fair hearing and contravened the administrative law judge's obligation to develop a full and fair record. *See* Statement of Errors at [9]-[12]. She argues that (i) it is unfair to preclude a lay witness from testifying as to her observations of a claimant's symptoms that relate to the claimant's alleged disabling impairments, (ii) Donahue would have been able to provide the administrative law judge and Dr. Claiborn with the benefit of her observations over a lengthy period of time of the plaintiff's inability to manage normal and routine tasks of daily living without Donahue's assistance, and (iii) this testimony would have been critical both to Dr. Claiborn's assessment of the severity of the plaintiff's mental illnesses and their impact on her RFC and to the administrative law judge's assessment of the plaintiff's credibility. *See id*. at [9]-[11].

The plaintiff further contends that the basis for the exclusion of Donahue's testimony, namely, the failure to submit Donahue's records, rested on a fallacy, which was that Benoit sought to have her testify as a medical expert rather than as a lay witness. *See id*. at [11]-[12]. She points to Benoit's analogy, at hearing, of Donahue's proposed testimony to that of two close, supportive friends, as well as to her own testimony at hearing that all Donahue did was to support her by helping her with organizational skills and with paperwork. *See id*. at [12].

Social Security applicants are afforded both statutory and constitutional due process rights. Such applicants have a statutory right, upon request, to "reasonable notice and opportunity for a hearing[.]" 42 U.S.C. § 405(b)(1). In addition, "applicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations."). "At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands." *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles*, 478 F.3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process[.]") (citations and internal quotation marks omitted).

In circumstances in which an administrative law judge has offered what amounts to reasonable notice and opportunity to be heard, there is no underlying due process violation. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 404-05 (1971) (holding that procedural due process had been afforded in case in which Social Security applicant claimed lack of opportunity to cross-examine reporting physicians but had not taken advantage of opportunity to request that they be subpoenaed; noting, *inter alia*, "This inaction on the claimant's part supports the Court of Appeals' view that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination.") (citation omitted); *Pate v. Astrue*, Civil Action No. H-08-249, 2009 WL 4825206, at *9 (S.D. Tex. Dec. 8, 2009) (finding no due process violation when, *inter alia*, the limitations imposed on claimant's attorney's elicitation of evidence from claimant were wholly reasonable, including limiting cumulative testimony).

In the circumstances presented, I discern no violation of the plaintiff's statutory or constitutional due process rights. Despite the plaintiff's protestations to the contrary, *see*

Statement of Errors at [11]-[12], Benoit did indeed suggest in his pre-hearing letter that the plaintiff intended to present Donahue as a treating provider, not a lay witness, *see* Record at 280. Not until the day of the hearing, when the administrative law judge precluded Donahue's testimony on the basis of the absence of the requested treatment records, did Benoit alternatively request that the administrative law judge consider "limiting the scope of the testimony" to permit her to testify as a fact witness. *See id.* at 35.

At oral argument, the plaintiff's counsel contended that Donahue was not a treating provider in that she did not provide "treatment," but rather, assistance and support to the plaintiff in accomplishing daily activities such as getting to appointments, filling out forms, and grocery shopping. Nonetheless, the administrative law judge reasonably viewed Donahue as a treating provider, where she had (i) obtained a special credential to work with mentally ill adults, an MHRT/C, (ii) played a critical role in the coordinated provision of services through the ACT team, and (iii) expressed opinions along with Lawrence in a mental health questionnaire. In turn, he reasonably determined that the absence of the ACT team's meeting notes would undermine his ability, and that of Dr. Claiborn, to examine her fully and fairly. Indeed, the plaintiff's counsel acknowledged at oral argument that, to the extent that Donahue qualified as a treating provider, the exclusion of her testimony in the absence of the provision of her progress notes was reasonable.

In addition, I agree with the commissioner's counsel's alternative argument that, even assuming *arguendo* that the administrative law judge erred in excluding Donahue's testimony, the plaintiff fails to make the showing of prejudice necessary to warrant reversal and remand. *See Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on administrative law judge's denial of permission to submit post-

hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (claim of failure to develop full and fair record, like claim that hearing has been held in absence of waiver of right to counsel, requires showing that Social Security applicant "was prejudiced as a result of scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result.").

At oral argument, the plaintiff's counsel contended that Donahue's lay testimony would not have been merely repetitive or corroborative of that of the plaintiff because the testimony of an observer is very different from that of a claimant, particularly the testimony of an observer such as Donahue who had the unique perspective of working regularly with the client and performing the same sorts of services for other clients, *i.e.*, helping them organize and manage their daily lives, over a long period of time. Nonetheless, to the extent that Donahue offered lay testimony, her testimony would have essentially corroborated, and been cumulative of, that of the plaintiff. She would have testified, as did the plaintiff, concerning the manner in which she rendered assistance to the plaintiff. To the extent that Donahue offered a unique perspective based on her training, experience, and/or expertise, her testimony would have crossed the line from that of a lay witness to that of a treating provider. As noted above, such testimony was reasonably excluded in the absence of the advance provision of her treatment notes. The plaintiff

accordingly fails to make a persuasive case that Donahue's lay testimony could have been outcome determinative.

## 2. Preclusion of Spring Harbor and IOP Evidence

The plaintiff next faults the administrative law judge's denial of her request to submit post-hearing evidence relating to a Spring Harbor Hospital admission and her participation in the IOP program, both of which Dr. Claiborn stated would have been helpful to have. *See* Statement of Errors at [12]-[15].

As noted above, the administrative law judge rebuffed the late proffer of the Spring Harbor Hospital and IOP program evidence on grounds that the plaintiff had failed to show "good cause" for its tardy admission, that is, that she failed to meet any of the three enumerated circumstances in which post-hearing evidence *must* be admitted pursuant to 20 C.F.R. § 405.331(c):

> If [a claimant] miss[es] the deadline described in paragraph (a) of this section and [he or she] wish[es] to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if [he or she] show[s] that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of [his or her] claim, and:
>
> (1)   [The commissioner's] action misled [the claimant];
>
> (2)   [The claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [him or her] from submitting the evidence earlier; or
>
> (3)   Some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him or her] from submitting the evidence earlier.

20 C.F.R. § 405.331(c).

The plaintiff does not contend that the administrative law judge erred in finding that none of these three prongs was met. *See* Statement of Errors at [12]-[15]. Rather, she (i) points out that he retained the discretion to admit the late-tendered evidence even in the absence of good

15

cause and (ii) argues that he should have exercised that discretion in furtherance of what she contends was the higher purpose of ensuring a full and fair hearing. *See id.*; *see also* 20 C.F.R. § 405.331(a) (in cases in which claimants fail to comply with five-day evidence rule, "the administrative law judge *may* decline to consider the evidence unless the circumstances described in paragraphs (b) or (c) of this section apply.") (emphasis added); Administrative Review Process for Adjudicating Initial Disability Claims, 71 Fed. Reg. 16424, 16435 (Mar. 31, 2006) ("[T]his final rule specifies that the administrative law judge will retain discretion at the time of the hearing to hold the record open for the submission of additional evidence.").

The plaintiff argues that, in the circumstances presented, in which Dr. Claiborn himself pointed out the absence of the evidence in question and testified that it might have affected his opinion of the plaintiff's mental functional capabilities, the commissioner's policies promoting full and fair development of cases trumped the policy reflected in section 405.331 of timely submission of evidence. *See* Statement of Errors at [15].

The commissioner has indeed stated that claimants should have broad latitude to question witnesses and medical experts, *see* Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual ("HALLEX") §§ I-2-6-60, I-2-6-70, and the First Circuit has recognized that administrative law judges have a general duty to develop the record, albeit less pronounced when, as here, a claimant is represented by counsel, *see, e.g.*, *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991); *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997).

Nonetheless, as counsel for the commissioner contended at oral argument, the language of section 405.331 is clear. An administrative law judge has no obligation to accept late-tendered evidence unless good cause is shown. Neither that regulation, nor the authorities cited

16

by the plaintiff, indicates that, in the absence of a showing of good cause, the commissioner's policies of full and fair record development trump the concern that led to the promulgation of section 405.331: that "the late submission of evidence to the administrative law judge significantly impede[d] [the commissioner's] ability to issue hearing decisions in a timely manner." 71 Fed. Reg. at 16434.[7]

The administrative law judge did not abuse his discretion in declining to permit the late submission of the IOP and Spring Harbor evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[7] In promulgating the DSI rules, the commissioner elaborated: "When new and voluminous medical evidence is presented at the hearing or shortly before, the administrative law judge does not have the time needed to review and consider that evidence. We often must reschedule the hearing, which not only delays the decision on that claim, but also delays other claimants' hearings. . . . [Pursuant to the DSI rules,] [c]laimants will be encouraged to submit evidence as soon as possible after they file their request for a hearing. They will be required to submit all of the evidence to be relied upon in a case no later than five business days before the hearing. This is a reasonable deadline given that we also require the administrative law judge to notify the claimant of the hearing date at least 75 days before the hearing. It will ensure that the administrative law judge and any medical or vocational expert or other individual who will be participating in the hearing will have time to review the record before the hearing in order to adequately prepare for the hearing, and that the hearing will not have to be postponed." 71 Fed. Reg. at 16434. As counsel for the commissioner noted at oral argument, a claimant wishing to show good cause for filing evidence post-hearing must meet not only one of the three delineated exceptions but also must demonstrate that there is a reasonable possibility that the evidence would have been outcome determinative. *See* 20 C.F.R. § 405.331(c). This suggests that the fact that late-tendered evidence might be outcome determinative does not, in itself, compel the exercise of discretion to admit that evidence.

Dated this 6th day of January, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge